31377. WEST *v.* THE STATE.

454

Decided October 29, 1946.

M. A. Walker, G. Y. Harrell, for plaintiff in error.

E. L. Forrester, Solicitor-General, contra.

MacINTYRE, J. ▮ ▮▮ The indictment against the defendant contained three counts. Count 2 was abandoned by the solicitor-general in open court. Count 1 charged that the defendant did unlawfully and with force and arms unlawfully keep, maintain, employ, and carry on a certain scheme and device for the hazarding of money and other valuable thing, said scheme and device being known as a slot machine. Count 3 charged that the defendant did unlawfully, and with force and arms unlawfully keep, maintain, employ, and carry on a certain scheme and device for the hazarding of money and other valuable thing, said scheme and device being known as a "Pace's Reels." The jury convicted the defendant, Mrs. W. B. West, on both counts 1 and 3. The evidence was to the following effect: The defendant is the wife of B. L. West. They lived in a dwelling house which was owned by the husband and which contained a store and dance hall. In the dance hall were located two machines for the hazarding of money, viz., a slot machine and a "Pace's Reels" machine. Mrs. West, the defendant, assisted her husband in the operation of the business in such store and dance hall by waiting on customers, making change of money

in order that patrons of the store and dance hall might operate the slot machines, making repairs and adjustments on the slot machines, and by removing money from the machines. Officer W. D. White testified in part as follows: "I was questioning her [Mrs. W. B. West] as to the money in the machines, and she said the machines belonged to she and Mr. West . . and I asked her who took the money out of them and she said both of them, he did and she did." Joe Ben West Jr. stated that, "when I saw those machines played sometimes, Mrs. West would be behind the counter, and sometimes when it failed to pay off somebody would complain and she would come and either pay them off or fix the machine; sometimes she would take a piece of hay wire and stick down in it and get it unlocked or something of the kind; I think she would raise the top of the machine; I have seen Mrs. West in this county this year give to the person complaining money that was won in the machines, but the machine did not pay them because it was stuck." Charlie Gordon testified in part as follows: "I have been down to the place that Mrs. Willie B. West worked in this county this year; when I got down there Mrs. West would be operating the place. . . I would ask Mrs. Willie B. West for change when I wanted to play those machines down there this year; she would give it to me; after she gave me the change she saw me play those machines with that money; I have seen those machines when they would break or hang up and would not work; that has happened to me down there; I would ask Mrs. Willie B. West what was the matter, and she would come there and unhang it; sometimes she would take a screw driver and unhang it; she would take the top off; I have seen her work with it. I have played that machine down there on Sunday this year; Mrs. West was there at that time; I got my change at that time from Mrs. West to play it."

The defendant made a statement, in which she said that the store and everything there belonged to Mr. West himself, and that as far as the machines were concerned she had nothing to do with them. She offered no other witnesses, but introduced the following documentary evidence: a special tax stamp, $100, U. S. Government, issued by the Collector for the District of Georgia to B. L. West, owner; and a special stamp, internal revenue No. 37,452, amount of $33.34, issued to B. L. West, highway 55, three miles north of

Parrott. Both the revenue special tax stamp license and receipt, dated July 6, 1945, were for $100; and the other stamp was dated May 17, 1945. The defendant also introduced a warranty deed from J. W. Tilley to B. L. West, dated September 14, 1912, and recorded September 16, 1912, conveying 40 acres more or less off of the northeast corner of lot 220 in the 18th district of Webster County, and being the lot where B. L. West resides.

Under the Code, § 26-6502, "any person who, by himself or another, shall keep, maintain, employ, or carry on any lottery or other scheme or device for the hazarding of any money or valuable thing, shall be guilty of a misdemeanor." Thus, anyone who participates in the illegal design and in the execution of the illegal purpose of carrying on the lottery is a criminal. It was the purpose of the act "to suppress lotteries by making it an offense to maintain or carry on one, or to do any of the several acts entering into the conduct of such a business; and the statute was framed, doubtless, with a view to reach all persons who might carry on, or participate in carrying on, the forbidden enterprise." *Henderson* v. *State*, 95 *Ga.* 326 (2), 328 (22 S. E. 537).

If the defendant here was guilty at all, she was guilty as a principal in the first degree, because in misdemeanors there are no such things as principals in the second degree or accessories. *Lewis* v. *State*, 33 *Ga.* 131, 134. Thus the defendant could be convicted on proof that she directly and personally did any of the several acts entering into the conduct of such lottery business, a misdemeanor, or that she procured, counseled, commanded, aided, or abetted the criminal transaction of another who was the direct and immediate actor. *Thomas* v. *State*, 65 *Ga. App.* 749 (16 S. E. 2d, 447). We think that the jury was authorized to find that it appeared affirmatively that the defendant was active in the participation in some of the several acts entering into the conduct of such lottery business (*Thrasher* v. *State*, 68 *Ga. App.* 820, 823, 24 S. E. 2d. 222), and to find her guilty under counts 1 and 3 as charged.

The judge charged the jury in part as follows: "The defendant is being tried under this provision of law: No person by himself or another shall keep, maintain, employ, or carry on any lottery in this State, or other scheme or device for the hazarding of any money or valuable thing, and the law provides that one so doing

is guilty of a misdemeanor. Our Supreme Court has ruled that when husband and wife reside together he is the head of the house, whether it be owned by her or be rented to one or the other. When both are present, it is his duty, not hers, to prevent unlawful gaming therein and, in order to hold her liable criminally for permitting such gaming, it must appear affirmatively that she was active in the granting of permission; not merely that she was passive in the matter and took no measures to hinder or prevent the gaming.

"Now I charge you, gentlemen, if you believe that the husband owned these machines and would be individually entitled to any monies that may have from time to time remained in these machines, and that defendant had no interest in such monies, yet, if you believe that Mrs. West took an active part in encouraging and aiding the patrons in playing monies into said machine, or if she in any manner aided and abetted her husband in the operation of such machines, and if you believe such machines, or either of them, were devices for the hazarding of money or other thing of value, and [if you believe such machines were being kept in such place of business for the purpose of being used and operated by patrons for the purpose of hazarding money or other thing of value, then this defendant would be guilty and this is true notwithstanding the United States Government may have issued to Ben L. West a license or permit to operate such machines]. In other words, such a license issued by the United States Government does not have any effect whatever upon the laws of this State against the maintaining and operating of such machines." (Brackets ours.)

In special ground 2 of the motion for new trial, the defendant excepts to that part of the charge enclosed in brackets, on the ground "that, although the jury may have believed that Ben L. West, the husband of the plaintiff in error, may have bought a license, and bought said machines, then under this instruction, if the machines were in the house, and kept there by Ben L. West for the purpose of hazarding money, or any thing of value, then the plaintiff in error would be guilty, although the jury may have doubted her guilt on any other issue. This charge commanded the jury to find Mrs. West guilty."

The rule laid down in *Keener* v. *State,* 18 *Ga.* 194, 230 (63 Am. D. 269), is that "It is the duty of the judge to declare to the jury

what the law is, with its exceptions and qualifications; and then to state hypothetically that, if certain facts which constitute the offense are proved to their satisfaction, they will find the defendant guilty; otherwise, they will acquit him." See, in this connection, *Cammons* v. *State*, 59 *Ga. App.* 759, 762 (2 S. E. 2d, 205). Also, "It has been held that the judge need not confine himself to the abstract, but may instruct the jury with reference to the concrete." *Blumenthal* v. *State*, 121 *Ga.* 477 (49 S. E. 597). To this end, in the absence of a timely written request, the judge in his charge to the jury may enumerate the acts and conduct constituting all the elements of the offense charged in the indictment, and then instruct the jury that, if these be established by proof, such acts and conduct would be sufficient to authorize the conclusion that the defendant is guilty of the crime charged. *Martin* v. *State*, 57 *Ga. App.* 346 (1) (195 S. E. 313).

In the instant case, the judge had previously charged the jury the general principles of law applicable to the issues, and the excerpt above quoted was enumerating the facts which would constitute the offense charged and, if proved, would authorize a verdict of guilty, and was in effect charging the law with reference to the concrete, and then stated immediately thereafter in the concrete that proof of certain facts, those shown in the brackets, would not, as contended by the defendant, be an exception or qualification to the law as given them immediately theretofore. *Bredosky* v. *State*, 62 *Ga. App.* 387 (8 S. E. 2d, 412); *Haugabrooks* v. *Metropolitan Life Ins. Co.*, 63 *Ga. App.* 829, 834 (12 S. E. 2d, 163). The excerpt enclosed in brackets in this ground—when considered in connection with instructions given just preceding and the explanatory sentence immediately following such excerpt, and taking into consideration the charge as a whole—was not likely to be misconstrued by the jury as contended by the defendant, nor was it calculated to mislead them as to what the true law is. *Sutton* v. *Ford*, 144 *Ga.* 587, 591 (87 S. E. 799, L. R. A. 1918D, 561, Ann. Cas. 1918A, 106); *Cosby* v. *Reid*, 21 *Ga. App.* 604, 607 (94 S. E. 589). Such instructions are not subject to any of the objections urged.

·Nor was it reversible error as contended in special ground 4 for the judge, in the absence of a request, to fail to charge that, "In this State the husband is recognized by the law as the head of his family, and, where he and his wife reside together, the legal pre-

sumption is that the house and all the household effects including any slot machines or other devices, or machines for the hazarding of money, belong to the husband as the head of the family; this presumption may be rebutted by proof." This matter, alleged to have been erroneously omitted from the charge, was merely elaborative of the instructions given on the substantial and controlling issues in so far as such matter bore on the participation and the running of the lottery by the defendant wife. *Branch* v. *Bishop*, 135 *Ga.* 110, 111 (68 S. E. 1021); *Sherrer* v. *Holliday*, 165 *Ga.* 413 (141 S. E. 67); *McCrackin* v. *McKinney*, 52 *Ga. App.* 519, 525-6 (183 S. E. 831); *Hood* v. *State*, 67 *Ga. App.* 291 (19 S. E. 2d, 927).

The defendant expressly stated that she insisted upon every ground of the motion for a new trial, but the only grounds specifically argued were the general grounds and special grounds 2 and 4. These grounds, decided adversely to her, have been discussed. Nevertheless, we have considered all of the grounds in the motion for a new trial and find no reversible error in any of them.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*