The Central Railroad and Banking Co. *v.* Phinazée.

1. A chartered railroad company permitting another company to run trains over its railway and thus to use its franchise, is liable to a passenger upon one of such trains for a personal injury sustained by him by reason of a derailment resulting from negligence in failing to have and maintain a safe track.

2. It is not incumbent upon the court to charge that "if the jury should believe that any of the witnesses sworn for the plaintiff have been successfully impeached or contradicted in a material matter sworn to by him or them, then the jury can disregard the whole testimony of such witness." A witness might be contradicted in a material matter and still be entitled to full credit as to other matters.

3. If the plaintiff's intoxication did not contribute to his injury or to the degree of it, his being intoxicated would not affect his right to recover; nor should it count against him as disqualifying him to avoid the consequences of the defendant's negligence, if the circumstances were such that a prudent sober man could not have avoided them by the exercise of ordinary diligence.

4. The evidence was not so clearly insufficient to warrant the verdict as to render it reversible error for the presiding judge to deny a new trial.

January 8, 1894.

Action for damages. Before Judge Jenkins. Bibb superior court. November term, 1892.

Steed & Wimberly and John R. Cooper, for plaintiff in error. Hugh V. Washington and Hardeman, Davis & Turner, *contra*.

Bleckley, Chief Justice.

1. There is no less scepticism in law than in theology. This court is called upon again and again for a fresh revelation of some legal truth which has already been revealed. After the cases of *Macon and Augusta R. R. Co. v. Mayes*, 49 *Ga.* 355, *Singleton* v. *Southwestern R. R. Co.*, 70 *Ga.* 464, and *Chattanooga, Rome and Columbus R. R. Co.* v. *Liddell*, 85 *Ga.* 482, it would seem that there could be no reasonable doubt of the liability of a chartered railroad company permitting another company to run

trains over its railway, and thus to use its franchise, to respond for any damage occasioned by negligence, whether its own or that of its lessee or licensee. Obviously the principle of those cases extends to an injury sustained by a passenger in consequence of the derailment of a train caused by negligence in failing to have and maintain a safe track. Indeed, the last of the cases above cited related to injuries sustained by a passenger, and the proprietary company was held liable.

2. The request to charge the jury that, "If the jury should believe that any of the witnesses sworn for the plaintiff have been successfully impeached or contradicted in a material matter sworn to by him or them, then the jury can disregard the whole testimony of such witness, whether it be the plaintiff or other person," was open to the objection that it would apply as well to a contradiction resulting from honest mistake on the part of the witness attacked, as to a contradiction due to willful and corrupt perjury. It might be clear to the jury that a witness contradicted in a material matter could be fully credited as to other matters, and when this is the case, it is not a rule of law that the whole of his testimony can be disregarded. The rule of *"falsus in uno falsus in omnibus,"* has relation to willful falsehood, and should be so restricted in giving it in charge to the jury. *Skipper* v. *The State,* 59 *Ga.* 63; *Ivey* v. *The State,* 23 *Ga.* 576.

3. The charge of the court on the subject of the plaintiff's intoxication, when analyzed, is reducible in substance to two propositions: first, if his intoxication did not contribute to the injury or to the degree of it, his being intoxicated would not affect his right to recover; second, that it should not count against him as disqualifying him to avoid the consequences of the defendant's negligence, if the circumstances were such that a prudent sober man could not have avoided them by the exercise

of ordinary diligence. We think both of these proposi-
tions are sound, and that they exhaust all that was in-
volved in the case as to the effect of the plaintiff's in-
toxication, whether it was total or partial. A common
carrier who, by negligence, injures a passenger, cannot
shun, in whole or in part, liability to make compensation
for the injury because the passenger was intoxicated,
unless his being intoxicated contributed either to pro-
duce or aggravate the injury, and surely the carrier
cannot complain that he failed in diligence to protect
himself against the consequences of the carrier's negli-
gence, if the exercise of diligence up to the measure of
that which a prudent sober man could and would have
exercised, under like circumstances, would not have been
available. There is no rule of law which requires a
passenger to preserve his capacity to act at all times as
a prudent man would act. If an occasion arises by rea-
son of the carrier's negligence when a prudent sober man
could not, by the exercise of all ordinary diligence, pro-
tect himself, it would be of no consequence that a passen-
ger injured by such negligence had by voluntary drunk-
enness incapacitated himself for the exercise of ordinary
diligence. The loss of capacity to do that which, if done,
would be unavailing, could not rationally count for any
excuse to the carrier, or be chargeable to the passenger
as a reason why he should not have compensation for
his injuries. Morally it might be a grievous fault in
in him, but legally it could have no significance, inas-
much as the result of the carrier's negligence would have
been the same with the presence of the capacity as it
was in its absence.

4. Had the trial court granted a new trial because the
evidence was insufficient to warrant the verdict, we
should have been well satisfied, but the insufficiency is
not so clear as to cut off the discretion of the presiding
judge in disposing of the motion for a new trial. It is

impossible for us to say that he committed any reversible error in denying the motion.   *Judgment affirmed.*