## 28347. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY *v.* HARRIS.

DECIDED NOVEMBER 27, 1940. REHEARING DENIED DECEMBER 19, 1940.

*William F. Buchanan, Ben Anderson,* for plaintiff in error.
*Paul Donehoo,* contra.

STEPHENS, P. J. Judge Harris brought suit against National Life & Accident Insurance Company to recover on a policy of life insurance issued by the company on the life of his wife. The policy provided that the company would pay to Judge Harris, the beneficiary, $300 upon due proof of the death of the insured during the continuance of the policy. The defendant filed an answer in which it alleged that its liability under the policy was limited to the return of the premiums paid by virtue of the following provisions contained therein: "3. No obligation is assumed by the company prior to the date hereof. Except as elsewhere herein provided, if the insured is not alive, or in sound health on the date hereof; or if before the date hereof, the insured has been rejected for insurance by this or by any other company, order, or association, or has been a patient or an inmate of any institution for the treatment of physical or mental disease, or has undergone any surgical operation, or has been attended by a physician, unless such rejection be specifically recited in the 'Space for Endorsements' in a waiver signed by the secretary, and unless it be shown by the claimant that no such institutional, surgical, or medical attention was for a serious condition; then, in such case, the company's full liability shall be discharged by the payment of the sum of the premiums received hereunder." The defendant alleged that the insured had been treated by a physician at Grady Hospital for pellagra before the issuance of the policy, and that in the application for the policy she had untruthfully answered the question contained therein: "What illness, injury or accident have you ever had?" by answering "None." The defendant alleged that, relying upon the truth of the representations made by the insured in her application, it issued the policy. It was alleged that the policy "contained no waiver signed by the secretary of the conditions . . as to treatment by a physician." The defendant tendered into court the premiums which had been paid on the policy. The case proceeded to trial and resulted in a verdict for the plaintiff for $150 "without interest."

The policy sued on was dated December 26, 1938, and contained

the condition or provision quoted above. It was admitted by counsel for the plaintiff that the insured had consulted a physician at the Grady Hospital before the issuance of the policy. It appeared from the evidence that the insured had untruthfully answered in the negative the question in the application as to whether she had been treated by a physician; that on March 29, 1938, she had visited the clinic at the Grady Hospital in Atlanta, Georgia, where she was treated for an irritated condition of the skin on the back of her hands and arms; that she returned to the hospital clinic on April 5, 1938, at which time her skin condition had improved, but she was advised to continue with the treatment; that she returned to the hospital clinic a third time on April 12, 1938, at which time her condition was definitely diagnosed as pellagra; that the attending physician at the clinic prescribed treatment for the insured; that he told her that she was suffering from pellagra and gave her a prescription for yeast to take, and advised her how to take it; that he advised her to take foods containing protein, and named them specifically. The physician testified that there was not any question in his mind but that on April 12 the insured was suffering from pellagra. The insured returned to the hospital again on April 19, 1938, at which time, the attending physician testified, she appeared to be improved. After that date she did not return again to the hospital, although she was advised by the doctor to return. This physician, Dr. P. H. Nippert, who was a specialist in dermatology, testified: "Pellagra is recognized as a deficiency disease. . . It is a condition that develops as the result of having an insufficient amount of certain vitamins." He testified that patients often recover therefrom if they continue the treatment, but that many of them, after having taken treatment for a reasonable length of time, "show rather remarkable improvement, and because of that fact they feel sure that they are entirely well,' and usually . . they just stop treating it and, of course, it returns quite promptly." This physician testified: "Pellagra is recognized in medicine as a serious disease," and "is a fairly common cause of death." There was no evidence tending to impeach the testimony of this physician. It further appeared from the evidence that the insured died on April 6, 1939, and that the cause of her death was pellagra. There was evidence in behalf of the insurance company to the effect that

at the time the policy was issued it had no knowledge that the insured had been previously treated at Grady Hospital. There was no evidence tending to contradict any of the above.

The defendant moved for a new trial on the general grounds, and by amendment added certain special grounds in which certain excerpts from the charge of the court were excepted to. It appears conclusively from the evidence that about eight months before the issuance of the policy the insured was treated for pellagra, a serious disease, and that when the defendant issued the policy it had no knowledge of this fact. There appears no waiver as to this by the defendant, either entered on the policy or otherwise. By virtue of the provisions of the policy limiting the liability of the company to the amount of the premiums paid, where the insured had been treated for a serious disease before the issuance of the policy, the plaintiff was not entitled to recover the benefit provided for. Therefore the verdict found for the plaintiff was without evidence to support it and was contrary to law. If there was any error in the excerpt from the charge of the court excepted to in ground 4 of the amendment to the motion for new trial, in that it stated that the burden of proof was not on the plaintiff to show that the treatment received by the insured was not for a serious condition, there is no exception to the charge of the court on this ground. That portion of the charge in ground 4 which instructed that the plaintiff should show by a preponderance of the evidence that the condition of the insured when she received treatment was not serious was favorable to the defendant, and therefore, if error, the defendant can not complain. It was not error harmful to the defendant for the court to give in charge the law with reference to fraud in the procurement of the policy. The excerpts from the charge of the court were not error for any reason assigned.

*Judgment reversed. Sutton and Felton, JJ., concur.*